## Lewis et al. v. Lewis et al.

(Decided March 23, 1934.)

844

BEN. T. QUINN for appellants.

POLK SOUTH, Jr., and JOHN BULL, Jr., guardian ad litem, for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The determinative question in this case is the correct interpretation of the will of W. P. Lewis, deceased, which was executed by him on September 14, 1900, and duly probated in the Franklin county court in which county he resided, on December 2, 1918. Omitting the attestation clause, and the signatures of testator and witnesses, the will in its entirety says: "I, Waller P. Lewis, of Frankfort, Franklin County, Ky., do make and publish this my last will and testament. First: I will and devise to my beloved wife, Sophronia B. Lewis, all my estate, real, personal and mixed of every description, desiring my debts to be paid. Second: I will and devise that at the death of my said wife if any of my estate remain undisposed of that it be equally divided among my legal heirs according to law. Third: I appoint my friend, Samuel Lewis, Executor of this my last will and testament without surety, and authorize and empower him to sell and dispose of any and all of my estate as he may see fit for the benefit and comfort of my said wife."

On May 29, 1922, the widow of the testator, Sophronia B. Lewis, executed her will, and after her death, and on July 6, 1931, it was probated in the same court; she having died a resident of the same county of her

deceased husband. She appointed the same person, Samuel Lewis, to execute her will that her husband did to execute his, and he qualified in both capacities. She devised about one-fifth of her estate to relatives of her deceased husband, and the remaining four-fifths to her brothers and sisters; neither she nor her husband leaving children or descendants of deceased ones. Some of her husband's collateral kindred (and who are appellants and were defendants below) after the death of the testatrix contended that all of the property left by her, and upon which alone her will could operate, was a part of her husband's estate either in specie or that into which it had been converted, and to settle that question the executor of the two wills (appellee and plaintiff below, Sam Lewis) filed this equity action in the Franklin circuit court against all of the appellants and defendants below (the husband's collateral heirs) seeking a construction of the will of W. P. Lewis and for the advice of the chancellor, and in his petition he set out the facts and filed copies of both wills as exhibits thereto. Some, but not all of the defendants answered and denied some of the affirmative allegations made in the petition, and also set out the facts we have related and averred that all of the property left by the testatrix was either a part of her husband's estate in kind, or substituted that which had been converted by her, and that her husband's will gave to her only a life estate therein with the right to encroach upon the corpus only to the extent of supplying her the "benefit and comfort" expressed therein, and that plaintiff, as executor of her husband's will, was made trustee therein for testatrix with the power to dispose of the husband's property and distribute it to his widow for such purpose, and that (she not having consumed the property during her lifetime) the remnant passed under her husband's will to his collateral heirs as he therein directed.

That pleading was made a cross-petition against plaintiff and the other defendants who did not join therein. A demurrer submitted to it by plaintiff was sustained by the court. Defendants declined to plead further, and their cross-petition was dismissed and a judgment was rendered interpreting the will of W. P. Lewis as devising to his surviving widow the absolute fee to all of his property, and from that judgment the cross-petitioners prosecute this appeal.

It will at once be seen, as stated in the beginning,

that the sole question for determination is the interpretation of the will of W. P. Lewis, according to the approved rules of law for that purpose, chief among which is, that the intention of the testator, as expressed in the language he employed throughout the entire testamentary paper, is the one to be administered by the court when applied to for that purpose. A great number of cases from this court sustaining, approving, and applying that rule may be found listed in volume 19 of West's Kentucky Digest on pages 239-243, both inclusive, under the title ''Wills,'' and in 439 and 440. They are of one accord, with the possible exception that some of the earlier ones, written by this court immediately following its creation, were more strict in the application of the common-law technical rules for the construction of wills than is the present and more modern accepted doctrine. For a considerable preceding period this as well as other courts have adopted the rule, and applied it without exception, that so long as the intention of the testator, *as gathered from all parts of his will,* is not in conflict with some positive principle of law, it will be given effect, and counsel for both sides in this controversy admit that such is the present state of the law and constitutes the rule that should be applied in this case.

A consultation of the cases will further reveal that in applying such general rule no hard and fast subsidiary ones are to be given unqualified effect, because of the all-sufficient reason that no two wills are couched in the same language, and that, after all, the issue is determinable by the ability of the court to properly interpret the language that the testator employed from the beginning to the end of his will, which necessarily implies that the testator's desires are not complete nor unalterably expressed in only one clause, but that his intention with reference thereto may be modified or qualified by other later clauses or expressions inserted in the will before it is finished. Differently stated, the rule is that a testator is not through expressing his intention until he reaches the end of his will and he may qualify any section, paragraph or clause, by an entirely disconnected one in another part of his will, the same as may be done by parties to a written contract, or by a Legislature in the enactment of a statute.

It is the contention of counsel for plaintiff in this case, and which the trial court approved, that the rule

and principle of interpretation as announced by this and other courts in a great number of cases (an illustration of which is Plaggenborg v Molendyk's Adm'r, 187 Ky. 509, 219 S. W. 438, and others cited therein and still others following it) should govern this case, and which, if true, would require us to affirm the judgment; while counsel for defendants, though not disputing the soundness of those cases, invoke the general rule supra, and contend that it was the intention of W. P. Lewis, as expressed by him in his entire will, to qualify the absolute title vested in his wife by the first clause of his will, and to confine her beneficial interest in his property to only a life estate with power to encroach upon its corpus if necessary for her "benefit and comfort," and which qualification is manifested in the third clause of his will, notwithstanding he in its first clause devised to her an apparent absolute estate therein. The rule so relied on by plaintiff's counsel is thus stated in the Plaggenborg Case supra: "It is the settled rule in this state that, where property is devised to one absolutely, with the power of unlimited disposition, the limitation over what remains undisposed of is void, but where a life estate only is devised, with power of unlimited disposition, the limitation over of what remains undisposed of is valid. Trustees Presbyterian Church of Somerset v. Mize, 181 Ky. 567, 205 S. W. 674, 2 A. L. R. 1237; Phelps v. Stoner's Adm'r, 184 Ky. 466, 212 S. W. 423; Nelson v. Nelson's Ex'r, 140 Ky. 410, 131 S. W. 187; Becker v. Roth, 132 Ky. 429, 115 S. W. 761; Commonwealth v. Stoll's Adm'r, 132 Ky. 237, 114 S. W. 279, 116 S. W. 687. Of course, the question in every case is whether the fee or a mere life estate was devised to the first taker." If the will of W. P. Lewis was couched in language to bring it within the terms of that rule, there would be no trouble in our approving the judgment. There is no doubt but that its first clause gave to his wife an absolute estate in his property; but, as stated, he had the right under the all-prevailing rule, supra, to modify or qualify that clause in subsequent or other parts of his will, and the question is: Did he do so before he finished it?

The text in 17 R. C. L. 623, sec. 11, in treating of the general subject of "Life Estates," says: "Unquestionably, a devise of a fee may be restricted by subsequent words in the will and reduced to a life estate," if the restrictive language does so "in clear and decisive

terms. * * * To give such effect, the words of the subsequent [and restrictive] clause must be as clear and decisive as are the words of the clause giving the estate in fee. The authorities recognize a more significant purpose in an application which tends to cut down a larger estate to a life estate where the remainder thereby passes to a person who is in line of descent than if it would pass to a stranger, because of the stronger motive which the testator would have to prefer the former to the latter class. * * * Obviously, a limitation over upon the death of the first taker is an indication of the intention of the testator that the first taker should have a life estate only.'' The cases supra, and others referred to in them, together with those referred to in such cited ones, unanimously approve the statements of that text, and when a case is presented involving such restrictive statements it is manifestly the duty of the court to follow the rules therein expressed.

In the light of such governing rules we will now attempt to analyze, so far as may be necessary, the will of W. P. Lewis, to the end that his intention as expressed therein may be arrived at and, consequentially, to ascertain whether or not the learned trial court properly interpreted it.

It is conceded by defendant's counsel that the first clause of the testator's will standing alone gave to his widow an absolute estate in the property devised. It is likewise correctly conceded by him that if there had been contained in the will no other qualifying language than an attempted disposition of what might remain of that property at the death of the wife it would have been ineffectual to cut down her absolute estate to anything less than the unqualified fee or absolute right therein (the approved rule in the Plaggenborg Case), and which rule we have indorsed without variation, since the attempted disposition of an unconsumed portion of a previously conveyed absolute estate is repugnant to the language creating it, as well as to the absolute title so given. On the contrary, if the title first given is expressly limited to a life estate, although followed by language that ''she may do with said property as she pleases,'' or language of similar import, it would yet be competent for the testator in other parts of his will to dispose of what the first taker might not consume in his lifetime, because he had expressly said that said taker's interest was limited to his life. Devises so made (ex-

pressly or by clear implication) are construed as creating a life estate in the first taker, but with power to encroach upon the corpus of the property if necessary for his reasonable comfort and support. If, however, such encroachments do not consume all of the property, then what may be left as unconsumed will go to the persons designated, and such wills are upheld by us and other courts whenever the question is presented.

An inspection of the will of W. P. Lewis in this case convinces us that it comes within the class last referred to. Its third clause appoints Samuel Lewis executor thereof without surety, "and authorizes and empowers him to sell and dispose of any and all of my estate as he may see fit *for the benefit and comfort of my said. wife."* (Our italics.) The vesting in him with the power to sell and dispose of the property is clearly inconsistent with the absolute estate which the unqualified language of the first clause of the will created in the wife, since if she received thereunder an absolute estate, then exclusive power and authority in her to sell and dispose of it would necessarily follow. Moreover, the authority and power given Samuel Lewis in the third clause of the will to sell and dispose of the property was only for "the benefit and comfort" of testator's wife. There is therein a most clearly and unambiguously expressed desire on the part of the testator that his wife might enjoy his property throughout her life, and that whatever portion of it that might become necessary to meet her requirements and to administer to her comfort (even to its exhaustion) could be appropriated for that purpose through the medium of the power and authority conferred upon his executor. Such intention on the part of the testator is expressed in language equally "as clear and decisive as are the words of the clause giving the estate in fee." That being true, under the established and approved rule as expressed in the text, supra, from 17 R. C. L., the restriction contained in the third clause of testator's will should be given the effect of reducing the apparent absolute estate given to his wife by the first clause of his will to one for her life with the power to encroach upon the corpus of the property if necessary for her comfortable support and which, as we have seen, it was competent for him to so provide.

It necessarily follows that the conclusion so reached by us requires a reversal of the judgment, but which interpretation will have no effect upon any property

that Mrs. Lewis may have owned at the time of her death which she obtained from other sources than through her husband's will, if any. The cross-petition alleged that all of the property which she left at the time of her death was obtained by her through her husband's will, and which, if true, should be distributed according to the second clause of his will, and not to those to whom the widow attempted to devise it; but if the facts are that she owned the property, or any part of it that she attempted to devise, under title obtained independently of her husband's will, such part (or the whole of it if so held by her) should be distributed according to her will. The case was tried on the allegations contained in the cross-petition, which were admitted by the demurrer filed thereto and to which no responsive pleading was filed, but which may be done upon a remand of the case if plaintiff can truthfully respond thereto. Other questions attempted to be raised we regard as immaterial.

For the reasons stated, the judgment is reversed, with directions to set it aside and to overrule plaintiff's demurrer to the answer and cross-petition, and for other proceedings not inconsistent with this opinion.