**POTTER–MATLOCK TRUST CO. et al. v. MYERS et al.**

Court of Appeals of Kentucky.

Dec. 15, 1950.

Rehearing Denied June 22, 1951.

G. D. Milliken, Jr., Joe S. Garman, Bowing Green, for appellants.

Rodes K. Myers, Leland H. Logan, Bowling Green, for appellants.

KNIGHT, Justice.

This is a suit by appellee acting for himself, and other bondholders similarly situated, against appellant, trustee for the bondholders of the Diamond Rock Asphalt Co. and all unknown persons holding bonds of that now bankrupt company, asking for a declaration of rights concerning the disposition of certain money now in the hands of the trustee. These are the facts in the case as shown by the pleadings and proof: Some years ago, the date not being material, the Diamond Rock Asphalt Co. was incorporated and bought the mineral rights of the defunct United Rock Asphalt Co. The bonds which had been issued by the latter company were placed in the hands of a bondholders' committee headed by E. G. Parsley of Parsley and Co. of Philadelphia and were later bought by the Diamond Rock Asphalt Co. which issued its bonds in payment therefor. The bonds were turned over to Parsley and Co. for distribution to the bondholders of the defunct United Rock Asphalt Co., this distribution being entirely in the hands of Parsley and Co.

Subsequently the Diamond Rock Asphalt Co., hereinafter called the Asphalt Co., became insolvent and, on or about November 2, 1936, entered into an agreement whereby appellant, Potter-Matlock Trust Co., hereinafter called the Trust Co., became trustee for its bondholders. Under this agreement, the Trust Co. was directed to liquidate the assets of the insolvent Asphalt Co. and apply the proceeds to the payment

of its outstanding bonded indebtedness. This it proceeded to do and declared eight dividends to the bondholders on dates ranging from the first one on December 27, 1939, to the final one on February 27, 1950. These dividends totaled 71.05% of the face value of the bonds, leaving a net loss to the bondholders at the present time of 28.95%. These dividend payments were made to all known bondholders, but the names and addresses of the owners of 110 bonds, which had been distributed through Parsley and Co. to the owners of the old United Rock Asphalt Co. bonds, were not known although every effort was made to locate them through Parsley and Co. and in other ways so that dividends could be paid to them. As a result of the inability to locate these unknown bondholders, approximately $7,863.03, representing the undistributed dividends, has accumulated in the hands of the Trust Co. as trustee with no apparent possibility of its distribution to the unknown bondholders. The assets of the insolvent Asphalt Co. have now been liquidated and the Trust Co. is desirous of making a settlement as trustee.

In this suit a warning order attorney was appointed to notify all unknown persons holding bonds and made defendants as such. He filed his report saying that after making a diligent effort he was unable to ascertain the names and addresses of the unknown bondholders. Proof in the case also shows that the trustee has made every effort to locate the unknown bondholders but without success. The original petition had prayed that the unknown bondholders be declared legally dead but there was no proof under which a judgment so declaring could have been upheld. An amended petition was filed pleading the statute of limitations and laches against the unknown bondholders.

The judgment of the lower court, entered November 16, 1950, was based on both these latter grounds. It adjudged that the unknown bondholders were guilty of laches and their claim was barred thereby. It further adjudged that "they were barred by the statute of limitations for the period from December 27, 1939 through February 27, 1950." It further adjudged that the ac-

cumulated dividends now in the hands of the trustee are declared lapsed insofar as the unknown bondholders are concerned and that this fund be distributed by the Trust Co. trustee among the known bondholders on a percentage basis according to the face value of the bonds held by them. Appellant appeals from this judgment, with which it is apparently not in disagreement, to obtain a final ruling of this court on the question involved.

This court has given this case careful consideration in the hope that it could find some basis on which the judgment of the lower court could be upheld. We have been cited to no authority which would justify the distribution of unclaimed dividends of unknown bondholders among the known bondholders as is here asked. Appellee cites the case of New Paddock-Hawley Co. v. Fayetteville Wagon, Wood and Lumber Co., D.C., 207 F. 786, and that case does discuss the principle of laches, estoppel and limitations, which were applicable there, but which we think have no application in this case in which the factual situation is entirely different.

We do not think this is a case to which the doctrine of laches is applicable. Laches in legal significance is not mere delay but delay that works a disadvantage to another. There can be no imputation of laches against a party who was meanwhile ignorant of his rights. McKenney v. Page, 146 Ky. 682, 143 S.W. 382. Laches, in a general sense, is the neglect, for an unreasonable and unexplained length of time under circumstances permitting diligence, to do what in law should have been done, which neglect results in disadvantage to another. It falls little short of estoppel and is applied upon the same principle. Hughes v. Wallace, Ky., 118 S.W. 324; Culton v. Asher, 149 Ky. 659, 149 S.W. 946. Black's Law Dictionary defines laches as "omission to assert a right for an unreasonable and unexplained length of time under circumstances prejudicial to adverse party."

Applying these well settled principles to the facts in the instant case, it is obvious that the doctrine of laches is in-

applicable because one of the elements essential to its application is lacking. The other bondholders involved here have not been prejudiced or disadvantaged in any way nor have their conditions with respect to the property or right in question been changed by the failure of the unknown bondholders to assert their rights. Appellees and other bondholders have received all they were entitled to in the liquidation of the affairs of the insolvent corporation. If all the absent and unknown bondholders had promptly asserted their rights and collected their dividends, appellees would still have received the 71.05% which they did receive. We are not impressed with appellees' contention that without this distribution, they will suffer a loss of 28.95% on the bonds which they owned. This was a chance which they took in making their original investment and they cannot ask that this loss be reduced by taking the property belonging to another. It is not likely that any of the unknown bondholders will ever show up and assert their claims but on the contrary they may do so the next week or next month after the money is distributed to the remaining bondholders and they would then have to resort to expensive legal process to establish their rights. It is true, as appellees contend, that unless this fund is distributed to the other bondholders, it may eventually be escheated to the state. This is no loss to appellees since it is not property to which they are entitled. It is a loss only to these unknown bondholders and even under the escheat statutes, Chapter 393 KRS, they have five years in which to reclaim any property escheated under the provisions of that chapter.

As the doctrine of laches has no application here, as above pointed out, we think it is equally clear that the statutes of limitation have no application in this proceeding. Statutes of limitation apply only to rights of action. The owners of these 110 bonds are not by any action on their part seeking recovery of this money from the trustee. If they were, the trustee might invoke the statute against such action as to some of the dividends which had been allowed but not collected during the period the statute was running. The trustee would not have to plead the statute since that is within its discretion. Certainly the statute was not intended to apply to a situation, such as we have here, in which the appellees are laying claim to property belonging to another and pleading the statute as part of the justification for doing so. We think the distribution of this fund to appellees cannot be sustained on this ground.

Although the judgment of the lower court was based on laches and limitations, it further said that the dividends declared by the trustee "are hereby declared lapsed insofar as the unknown bondholders are concerned and they shall revert to the known bondholders." It is also suggested in briefs of counsel that the unclaimed dividends could be distributed to the known bondholders much on the theory of a lapsed legacy in the disposition of the assets of an estate. It is, of course, a settled principle under the law pertaining to wills that where a legatee dies before the testator, or before the legacy is payable, the bequest lapses and it then falls back into the residuary fund of the estate. The lapsed legacy or devise is one which never vests because the legatee dies before the testator or before his interest vests under the will. There is no similar provision in corporation law which would permit a dividend declared in favor of one or more bondholders to fall back into a fund for the benefit of other bondholders because an unknown or unlocated bondholder did not claim his dividend. When these dividends on these bonds were declared on the various dates, they vested in the holder of the bonds and became his property and he cannot be divested of it to be turned over to other bondholders in the absence of a statute or some established principle of law which would permit such disposition of it under circumstances such as are shown in this case. We think the distribution could not be made under the lapsed legacy theory since the situations are not analogous.

For the reasons herein indicated, the judgment of the lower court must be reversed.

SIMS, C. J., not sitting.